**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| WILMINGTON TRUST, NATIONAL ASSOCIATION, NOT IN ITS INDIVIDUAL CAPACITY, BUT SOLELY AS TRUSTEE FOR MFRA TRUST 2014-1, *Plaintiff*, | ) | 3:25-CV-01874 (SVN) |
| v. | ) | September 30, 2026 |
| CHRISTINE IRVINE, *Defendant*. | ) | |

**<u>ORDER ON MOTIONS FOR SANCTIONS</u>**

Sarala V. Nagala, United States District Judge.

In this long-running foreclosure action removed from Connecticut Superior Court, Plaintiff Wilmington Trust, National Association, Not in its Individual Capacity, But Solely as Trustee for MFRA Trust 2014-1 ("Plaintiff") seeks to foreclose on a mortgage originally given by Defendant Christine Irvine to Washington Mutual Bank, FA on January 13, 2006. In two motions presently before the Court, Defendant requests that the Court impose sanctions on Plaintiff in relation to Plaintiff's filing of an allegedly insufficient affidavit and a brief allegedly containing misrepresentations of fact. Mot. for Sanctions, ECF No. 9; Mot. for Sanctions, ECF No. 10. For the reasons described below, the Court declines to impose sanctions for the challenged conduct.

## I. FACTUAL BACKGROUND

As the parties to this matter are aware, this action has been pending for more than ten years, and the litigation history is voluminous. The Court thus briefly recites only those facts that are relevant to the pending motions for sanctions.

A. Relevant Procedural History

On May 24, 2016, then-Plaintiff J.P. Morgan Chase, N.A. ("Chase") filed a foreclosure complaint against Defendant and other parties in Connecticut Superior Court.[1] On December 29, 2019, the Superior Court granted a motion to substitute Wilmington Trust, National Association, Not in its Individual Capacity, But Solely as Trustee for MFRA Trust 2014-1 as Plaintiff in this matter. *See* Dkt. No. 161.01. Several substitutions of counsel have also occurred over the course of this matter; as relevant here, Brock & Scott, P.L.L.C. ("Brock & Scott") appeared on behalf of Plaintiff in August of 2023. Brock & Scott no longer represents Plaintiff, who is now represented in this matter by Troutman Pepper Locke LLP.

Between 2016 and 2019, several attempts to resolve the foreclosure case through mediation failed. *See*, *e.g.*, Dkt. No. 159.00. Significant discovery disputes followed. Since 2023, Defendant has filed several motions for sanctions against Plaintiff and its counsel based on Plaintiff's litigation conduct and alleged misrepresentations to the Superior Court. *See*, *e.g.*, Mots. for Sanctions, Dkt. Nos. 255.00, 293.00, 302.00, 350.00, 379.00 (filed in this action at ECF No. 9), 384.00 (filed in this action at ECF No. 10).

As relevant to the present motions, during the mediation period, the Superior Court ordered Plaintiff to "provide the defendant with a history of the generation of any 1099 form that has been issued and must bring it to the first mediation session." Dkt. No. 146.02. Plaintiff did not produce any records "for almost six years." Dkt. No. 350.02 (filed in this action at ECF No. 52-1 at 2–3).

[1] *See JPMorgan Chase Bank Nat'l Assn. v. Christine Irvine*, No. FST-CV16-6028648-S (Conn. Super. Ct.), Superior Court Case Look-Up, Dkt. No. FST-CV16-6028648-S, https://civilinquiry.jud.ct.gov/CaseDetail/PublicCaseDetail.aspx?DocketNo=FSTCV166028648S (last visited September 30, 2026). The Court may take judicial notice of documents filed in state court. *See Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006). For the purposes of this Order, the Court refers to docket entries in the Superior Court case using the notation "Dkt. No." It refers to docket entries on its own docket using the standard notation "ECF No." After first mention, subsequent references to relevant documents filed on both the Superior Court docket and this Court's docket will use the document's "ECF No." rather than "Dkt. No."

At a sanctions hearing in August of 2024, the Superior Court again ordered Plaintiff to produce documents relevant to the generation of 1099 forms filed by Chase with the Internal Revenue Service. *Id.* at 2.

Defendant filed a motion for sanctions in April of 2025, asserting, *inter alia*, that Plaintiff had failed to produce the 1099 forms. Dkt. No. 350.00. The Superior Court scheduled a hearing on the motion on June 3, 2025. Dkt. No. 350.01. A few days prior to the hearing, Plaintiff produced a "significant number of documents ordered by the Court." ECF No. 52-1 at 2. Anthony Younger, a representative of Plaintiff's loan servicer, Fay Servicing LLC ("Fay Servicing"), testified at the hearing. *Id.* at 2–3. In an order issued July 7, 2025, the Superior Court found that Younger "credibly and clearly testified that no search was ever conducted for the documentation ordered to be produced by the Court" and that Plaintiff's counsel had not requested Fay Servicing LLC to "conduct any search for this documentation" until after the court scheduled the June 3, 2025 hearing. *Id.*

The Superior Court found that this testimony was contrary to counsel's representations that Plaintiff had "attempted to obtain a 1099 from its predecessor [Chase], but ha[d] been unable to do so," and that Plaintiff's counsel had made such misrepresentations to the Superior Court to

dissuade it from entering sanctions. *Id.* at 3. The Superior Court thus sanctioned Brock & Scott in the amount of $5,000 to be paid to Defendant. *Id.*[2]

In order to determine whether Plaintiff itself should be sanctioned with respect to the failure to search for and produce 1099 forms, the Superior Court ordered Plaintiff to produce "an affidavit from a representative of plaintiff as to whether: (1) the Objection filed in its name on April 9, 2025 was reviewed and endorsed by the plaintiff; and (2) whether it knew of the Court's prior Orders regarding the production of these records." ECF No. 52-1 at 3. Defendant filed a motion for partial reconsideration of the sanctions order, specifically objecting to "the opportunity provided to Plaintiff to file an additional follow up affidavit" on the basis that the record contained facts sufficient to demonstrate that Plaintiff itself knew of the Superior Court's order to provide the 1099 forms to Defendant. Dkt. No. 374.00.

On July 28, 2025, Plaintiff produced an affidavit from Chris McBrayer, an Assistant Vice President of Fay Servicing. Dkt. No. 382.00 (ECF No. 52-1 at 6–95). McBrayer stated that "No one at Fay Servicing reviewed the objection filed by Plaintiff's counsel, prior to its filing. However, the objection did accurately allege on page 3 that Fay Servicing was unable to find the 1099-C showing debt forgiveness of $64,352.45 as of the date of the objection." *Id.* at 7. McBrayer further represented that "Fay Servicing records show that personnel knew of the court

[2] The Superior Court had previously acknowledged litigation misconduct by Plaintiff's former counsel. First, Plaintiff filed blanket objections to Defendant's requests for admissions; the Superior Court overruled the objections and ordered Plaintiff to respond. Dkt. No. 255.01. Upon a motion for sanctions by Defendant, the Superior Court found that Plaintiff made the objections in bad faith to frustrate Defendant's discovery requests. Dkt. No. 255.01. Second, the Superior Court struck a sur-reply impermissibly filed by Plaintiff without leave of the court. Dkt. No. 293.02. Third, the Superior Court found that Plaintiff made at least one "demonstrably false" representation in an objection to Defendant's request to extend the mediation period. Dkt. No. 302.01. The Court issued sanctions against Plaintiff and its then-counsel, Bendett & McHugh, "in the form of a reprimand for filing a document containing false information with the Court in order to terminate the foreclosure mediation with defendant and for not removing such document after it was clearly pointed out to counsel on December 11, 2017, that such filing contained false information." *Id.* at 2. The Superior Court noted that future misrepresentations by Plaintiff's counsel would result in a monetary sanction. *Id.*

orders regarding production of a history of the 1099s, and Fay Servicing attempted to comply by providing a payment history. The payment history provided at the mediation on April 12, 2019 is the same payment history provided at the hearing on June 3, 2025. The payment history, together with the loan modification, does provide a history of the generation of the 1099-Cs." *Id.*[3]

B. The Instant Motions

Two of Defendant's motions for sanctions relating to these events were not resolved prior to removal. First, Defendant filed a motion for sanctions relating to "material misrepresentations" by Plaintiff's counsel in opposition to her motion for partial reconsideration of the Superior Court's July 7, 2025 sanctions order. ECF No. 9.[4] Second, Defendant filed a motion for sanctions relating to the McBrayer Affidavit. ECF No. 10.

In the first motion, Defendant seeks a sanction of dismissal pursuant to Connecticut Practice Book § 1-25 and § 13-14. ECF No. 9. Defendant argues that Plaintiff, in responding to her motion for reconsideration, misrepresented the "timing and substance of its compliance" with the terms of the Superior Court's order to produce the 1099 forms, misrepresented "the content of key orders, mediator's reports, and correspondence," and "falsely claims Plaintiff complied with orders and provided all required information, when in fact the Court found the opposite." *Id.* at 2–3.

In the second motion, Defendant likewise seeks a sanction of dismissal and "appropriate relief" in response to Plaintiff's submission of the McBrayer affidavit, which Defendant describes as "noncompliant with the clear language" of the Superior Court's order, "ambiguous [and]

[3] The same day as it filed the McBrayer Affidavit, Plaintiff also moved to reargue the Superior Court's order imposing sanctions. Dkt. No. 383.00. The Superior Court denied the motion to reargue. Dkt. No. 383.01.

[4] The motion's introductory paragraph describes the filing as a "reply to Plaintiff's Objection to Defendant's Motion for Reconsideration," but the document is titled "Motion for Sanctions" and otherwise appears to not actually be a reply on Defendant's motion for reconsideration. ECF No. 9 at 1.

misleading," and "made in bad faith." ECF No. 10 at 1. Defendant seeks sanctions pursuant to Connecticut Practice Book § 1-25, § 17-48, and § 13-14.

## II. LEGAL STANDARD

Removed actions—including motions pending at the time of removal—are governed by the Federal Rules of Civil Procedure, rather than the procedural rules of the state where a case was originally filed. *Bressette v. Plan. & Zoning Comm'n of Town of N. Stonington*, No. 3:99-CV-1213 (GLG), 2000 WL 433928, at *1 (D. Conn. Apr. 18, 2000) ("[O]nce removed, matters of procedure are governed by the Federal Rules of Civil Procedure"); Fed. R. Civ. P. 81(c)(1).

Federal courts derive the power to sanction from, *inter alia*, their own inherent authority or the Federal Rules of Civil Procedure. *See Marshall v. City of Meriden*, No. 3:11-CV-577 (JCH), 2017 WL 5513200, at *1 (D. Conn. Jan. 25, 2017), *adhered to on reconsideration*, No. 3:11-CV-577 (JCH), 2017 WL 5513202 (D. Conn. Mar. 13, 2017).

## III. DISCUSSION

Defendant seeks sanctions pursuant to Connecticut procedural rules, which no longer govern this action. "State procedural rules . . . are not applicable in federal court." *Diversified Const. of WNY, Inc. v. Sheds USA, Inc.*, No. 04-CV-0739, 2005 WL 1263151, at *2 (W.D.N.Y. May 26, 2005). Accordingly, the Court considers whether sanctions are appropriate pursuant to the Federal Rules of Civil Procedure and its own inherent authority, and finds that they are not.

### A. Rule 11

The Court lacks authority to impose sanctions under Rule 11 with respect to either of Defendant's motions.

Under Federal Rule of Civil Procedure 11(b), an attorney or *pro se* party presenting a paper to the court certifies that "(1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) the claims, defenses, and

other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information." Fed. R. Civ. P. 11(b). If the court determines that Rule 11(b) has been violated, it may impose a sanction under Fed. R. Civ. P. 11(c). *See Marshall*, 2017 WL 5513200, at *2. But Rule 11 sanctions "should be imposed with caution." *Knipe v. Skinner*, 19 F.3d 72, 78 (2d Cir. 1994).

"Rule 11, of course, does not purport to authorize sanctions for actions taken in state courts." *Brown v. Capitol Air, Inc.*, 797 F.2d 106, 108 (2d Cir. 1986) (finding that Rule 11 sanctions "may be imposed in appropriate circumstances for *post-removal* proceedings in the federal court") (emphasis added). Rule 11 "deals exclusively with 'the certification flowing from the signature to a pleading, motion, or other paper in a lawsuit,'" and "simply d[oes] not apply" to documents filed in state court. *Stiefvater Real Est., Inc. v. Hinsdale*, 812 F.2d 805, 809 (2d Cir. 1987) (citing *Oliveri v. Thompson,* 803 F.2d 1265 (2d Cir.1986)); *Hamilton v. Ables*, No. 2:23-CV-01342 (DJC) (DB), 2024 WL 944493, at *8 (E.D. Cal. Mar. 5, 2024) (citing *Brown*, 797 F. 2d at 108) ("Rule 11 sanctions do not apply to conduct that occurred in state court prior to removal"); *Hotel St. George Assocs v. Morgenstern*, 819 F. Supp. 310, 321 (S.D.N.Y. 1993) (declining to impose Rule 11 sanctions based on filing of complaint in state court before removal, where motion for sanctions was first sought in state court); *Dahnke v. Teamsters Loc. 695*, 906 F.2d 1192, 1199–200 (7th Cir. 1990) (collecting cases) ("There seems to be little question that federal courts cannot

impose Rule 11 sanctions on a party for actions taken in state court"). Thus, the Court could not sanction Plaintiff pursuant to Rule 11, even if sanctions were found to be appropriate.[5]

B. Inherent Authority

Sanctions pursuant to the Court's inherent authority are likewise inappropriate.

A court's inherent authority to impose sanctions is grounded in its "power to control the proceedings that take place before it . . . a federal court may exercise its inherent power to sanction a party or an attorney who has 'acted in bad faith, vexatiously, wantonly, or for oppressive reasons.'" *Marshall*, 2017 WL 5513200, at *1 (quoting *Ransmeier v. Mariani*, 718 F.3d 64, 68 (2d Cir. 2013) (cleaned up). The Supreme Court has made clear that "courts should impose sanctions pursuant to their inherent authority only in rare circumstances." *Yukos Cap. S.A.R.L. v. Feldman*, 977 F.3d 216, 235 (2d Cir. 2020) (citing *Chambers v. NASCO, Inc*, 501 U.S. 32, 44 (1991) ("Because of their very potency, inherent powers must be exercised with restraint and discretion.")).

As a threshold matter, it is not clear that the Court has the power to impose sanctions under its inherent authority in response to violations of state procedural rules. Indeed, some courts have found that district courts do not possess such power. *See Gibson v. Chrysler Corp.*, 261 F.3d 927, 948 (9th Cir. 2001) (holding, in a removed action, that "[w]e are unaware of any authority . . . suggesting that a federal district court can sanction discovery abuse in state court when that court has neither found nor sanctioned such abuse itself . . . [w]e therefore agree with the district court that it could not sanction plaintiffs"); *In re Fierro*, 616 B.R. 596, 611 (Bankr. E.D.N.Y. 2020) ("[T]his Court's inherent power to sanction cannot reach conduct that occurred solely before the

[5] For similar reasons, the Court does not believe it possesses the authority to issue sanctions pursuant to Fed. R. Civ. P. 26 or Fed. R. Civ. P. 37, which also apply to litigation conduct in federal court. Rule 26, like Rule 11, contemplates sanctions for "improper certification[s]" made in federal court. Fed. R. Civ. P. 26. Rule 37, similarly, authorizes sanctions for failure to obey a court order in "the court where the action is pending." Fed. R. Civ. P. 37.

State Court"); *Cf.* 1 Sanctions: The Fed. Law of Lit. Abuse § 5(A)(2)(f) (2026) (arguing that federal courts declining to impose sanctions based on state procedural rules should exercise their broad discretion to do so, rather than finding that they lack the requisite authority to impose such sanctions).

The Court conducts its own, independent analysis of whether to impose sanctions pursuant to its inherent authority, assuming that it could do so. *See Fecteau v. City of Mount Vernon*, No. 23-CV-9173 (KMK), 2026 WL 2836392, at *7 n.8 (S.D.N.Y. Mar. 25, 2026) ("A federal court is not bound by a state court's decision on the availability of sanctions.") (citing *People v. Terry,* 45 F.3d 17, 23 (2d Cir. 1995)). Assuming for the purposes of this Order that the Court's inherent authority encompasses the ability to impose sanctions for the violation of state procedural rules and Superior Court orders, the Court declines to exercise such powers to sanction Plaintiff in this action; the challenged conduct did not occur before this Court, and, in any event, the Court finds that it does not warrant sanctions.

*1. ECF 9*

First, Defendant asserts that Plaintiff's objection to her motion for partial reconsideration of the Superior Court's July 7, 2025 sanctions order contains "misrepresentations" and other litigation misconduct warranting sanctions. ECF No. 9 at 4. The Court finds that it does not, and that sanctions are unwarranted.

None of Plaintiff's statements upon which Defendant's motion is based are "misrepresentations" providing a basis for sanctions. "Under . . . the inherent power of the court, sanctions are appropriate where an individual has made a false statement to the court and has done so in bad faith." *S.E.C. v. Smith,* 710 F.3d 87, 97 (2d Cir. 2013). Defendant has not identified any such statements. For example, Defendant objects to Plaintiff's statement that, "nearly a year before the order" requiring production of the 1099 forms, "Chase was not servicing" the relevant loan.

ECF No. 9 at 4. But in her very next sentence, Defendant herself acknowledges that Plaintiff's statement "may or may not be true," and proceeds to argue the relevance of the identity of the loan servicer rather than discussing the truth or falsity of Plaintiff's statement. *Id.* Defendant later complains that Plaintiff improperly referenced objected-to testimony in its response brief in order to "sneak [it] in" to the record, and argues that the testimony should not be included in Plaintiff's objection. *Id.* at 5. But Plaintiff's filing specifically indicated that the colloquy in question was the subject of a sustained objection, such that it is clear Plaintiff did not seek to present the exchange as evidence. *See* Pl.'s Opp. to Mot. for Reconsideration, ECF No. 51-1 at 4–5. Defendant further asserts that "Plaintiff claims that Defendant failed to provide a financial package to Plaintiff," but no such claim appears in Plaintiff's opposition; rather, Plaintiff points to a mediator's report reflecting that, in 2019, the parties *disputed* whether or not she had provided a financial package. ECF No. 51-1 at 8.[6] The Court does not find that any of the asserted misrepresentations were false statements of fact, much less that any false statements were made in bad faith. *Cf. Marshall*, 2017 WL 5513200, at *1.

Indeed, most of Defendant's motion appears to simply dispute the litigation positions and legal argument reflected in Plaintiff's objection. For example, Defendant challenges Plaintiff's characterization of a letter sent in 2023, ECF No. 9 at 12 ("Plaintiff's objection . . . contains several misrepresentations about the meaning and context of the letter"); *id.* at 13 ("The plaintiff is objectively making a straw man argument—attempting to rebut an argument that I never made."), and pushes back on Plaintiff's argument that one of Defendant's claims was "demonstrably false,"

[6] Elsewhere, Defendant speculates that Plaintiff may have made an untrue statement about the contents of Brock & Scott's call log. *Id.* at 13–14 ("Defendant feels that it is highly likely that Plaintiff did not include the log in their exhibits because that phrase is probably not there . . . Let's see what the log says. If the log does say that, fine. It is odd Plaintiff did not include it as an exhibit, and again it does not really matter. Clearly Fay knew about the order and failed to conduct a search."). It goes without saying that Defendant's speculation is not a basis for sanctions.

*see, e.g.*, ECF No. 9 at 16 ("Despite claiming that what I said was demonstrably false, Plaintiff provided no demonstrated to demonstrate a falsity . . . I maintain that I did not receive that letter. I do believe it was fabricated by opposing counsel. My basis for that claim is that this letter contradicts every single thing on the record regarding the Plaintiffs failure to deliver 1099s."). To the extent Defendant claims these constitute sanctionable misrepresentations by Plaintiff, she is incorrect; the purpose of submitting legal briefing is to present the parties' competing characterizations of the relevant facts. *See*, *e.g.*, *Trs. of Mosaic & Terrazzo Welfare, Pension, Annuity, & Vacation Funds v. Elite Terrazzo Flooring, Inc.*, No. 18-CV-1471 (CBA) (CLP), 2020 WL 1172635, at *13 (E.D.N.Y. Feb. 20, 2020) ("not all unsuccessful legal arguments are frivolous or warrant sanction"), *report and recommendation adopted*, 2020 WL 1166616 (E.D.N.Y. Mar. 11, 2020) (quoting *Mareno v. Rowe*, 910 F.2d 1043, 1047 (2d Cir. 1990); *Abdul-Hakeem v. Koehler*, No. 89-CV-3142 (MBM), 1989 WL 85173, at *4 (S.D.N.Y. July 21, 1989) ("[L]egal arguments will not form the basis for the imposition of sanctions."). Defendant's arguments on this point are better characterized as attempts to defend and bolster Defendant's own prior claims rather than identifying legitimate bases for sanctions against Plaintiff.

Similarly, Plaintiff's argument that it complied with orders to produce IRS documents is just that—legal argument in opposition to Defendant's request for the Superior Court to impose sanctions on Plaintiff. The parties dispute whether Plaintiff was ordered to "physically provide[]" "all 1099s," as Defendant asserts, *see* ECF No. 9 at 7, or if, as Plaintiff claims, Plaintiff was merely ordered to provide a "*history* of the 1099s" rather than the documents themselves, ECF No. 51-1 at 4. Plaintiff's position here—disputing the legal question of compliance—is distinct from its factual misrepresentation on April 9, 2025, that it had "attempted to obtain a 1099 from its predecessor, but ha[d] been unable to do so." *See* ECF No. 52-1 at 3. While it is possible that

Plaintiff's position that it was indeed in compliance with court orders is legally incorrect, it is not a basis for sanctions. *See Nat'l Convenience Distributors, LLC v. Mountain Candy & Cigar Co.*, No. 25-CV-00259 (ER), 2026 WL 862105, at *11 (S.D.N.Y. Mar. 27, 2026) ("[L]osing arguments are not necessarily sanctionable arguments."); *see also Garcia v. Execu|Search Grp, LLC*, No. 17-CV-9401, 2019 WL 689084, at *5 (S.D.N.Y. Feb. 19, 2019) ("[T]he mere proffer of unmeritorious arguments is insufficient on its own to warrant" a sanctions award.). And to the extent Defendant seeks to further litigate the issue of whether Plaintiff failed to produce relevant IRS documents in violation of a Superior Court order, it is inappropriate to do so through a motion challenging the statements made in one of Plaintiff's briefs. *See Doe v. Martucci*, No. 20-CV-02331 (PMH), 2024 WL 5118505, at *11 (S.D.N.Y. Dec. 16, 2024) ("[S]anctions motions that fail to show that the purportedly frivolous arguments are foreclosed by binding precedent, and instead 'merely recast the[ir] opposition arguments into a Rule 11-esque form' are manifestly improper."), *aff'd sub nom. Doe v. Seliger*, No. 25-159-CV, 2025 WL 3637085 (2d Cir. Dec. 16, 2025), *cert. denied,* 146 S. Ct. 2744 (2026).

The Court has considered the other bases for sanctions set forth in Defendant's motion at ECF No. 9 and concludes they are without merit.

2. *ECF No. 10*

Second, Defendant asserts that Plaintiff should be sanctioned in connection with its submission of the McBrayer affidavit. Here, too, the Court finds that sanctions are unwarranted.

Defendant seeks sanctions on the grounds that the McBrayer affidavit is "noncompliant with the clear language of the [Superior Court's] order. The affiant is not an officer or authorized representative of Wilmington Trust . . . It does not answer the court's direct questions regarding Plaintiff's knowledge, review, and endorsement. It offers misleading justifications . . .that contradict the record and the [Superior Court's] orders. The substance of the affidavit is

ambiguous, misleading, and relies on a piece of evidence that is overtly unnecessarily redacted." ECF No. 10 at 1. Defendant further asserts that the affidavit was made in bad faith. *Id.*

The Court finds that any deficiencies in the affidavit are not sanctionable. Defendant's argument that sanctions should be imposed because the affidavit contains "no admissible proof of Fay's authority or agency" and "is not competent evidence of Plaintiff's compliance or knowledge," *id.*, is unavailing. The scope of any agency relationship between Plaintiff and Fay Servicing, and what constitutes "competent evidence," are plainly legal questions that do not support the imposition of sanctions for the same reasons discussed with respect to the legal disputes raised in ECF No. 9. "[C]ontestable legal arguments [are] more appropriate for a motion to dismiss, or even a motion for summary judgment, not a motion for sanctions." *Dynkin v. Alcalay*, No. 11-CV-5004 (HG) (ARL), 2023 WL 5822281, at *2 n.4 (E.D.N.Y. June 26, 2023); *see also Abdul-Hakeem*, 1989 WL 85173, at *4. Defendant's argument that McBrayer "is attempting to mischaracterize" documents in the record, *see, e.g.*, ECF No. 10 at 19, is similarly not an appropriate basis for a sanctions motion.

Sanctions are also unwarranted because Defendant's argument that the affidavit was made in "bad faith" is not supported by evidence. For example, Defendant posits that McBrayer's statement that Fay Servicing "attempted to comply [with Superior Court orders] by providing a payment history" shows bad faith because Fay Servicing had continued to request information regarding the 1099 forms after providing such payment history. ECF No. 10 at 3–7. Defendant argues that this indicates Fay Servicing previously believed providing a payment history was insufficient, but changed its tune solely to cover its tracks. *Id.* But, as Plaintiff points out, Fay Servicing's position that it "attempted to comply . . . by providing a payment history" is entirely consistent with continuing to request additional information about 1099 forms. *See* Pl.'s Opp. to

Mot. for Sanctions, ECF No. 52 at 2. And even if this *did* represent a change in Plaintiff's litigation position, "one cannot conclude simply from changes in prior legal arguments that subsequent legal arguments are without basis" and thus deserving of sanctions. *Retail, Wholesale & Chain Store Food Emps. Union, Loc. 338 v. Red Apple Supermarkets*, No. CIVA98-CV0215 (DGT), 1999 WL 551253, at *6 (E.D.N.Y. June 24, 1999).

The Court has considered the other bases for sanctions set forth in Defendant's motion at ECF No. 10, including that it contains "misleading justifications" and "unnecessarily redacted" exhibits, and concludes they are without merit. The Court therefore declines to impose the sanctions Defendant has requested, assuming it has the authority to impose them in the first place.

The Court will, however, continue the Superior Court's inquiry into Plaintiff's involvement in the delayed production of the 1099 forms, and require Plaintiff to explain why McBrayer is properly considered "Plaintiff's representative" for purposes of complying with the Superior Court's July 7, 2025 sanctions order. The Court will issue a separate Order to Show Cause on this issue.

## IV. CONCLUSION

For the reasons described herein, Defendant's motions for sanctions, ECF Nos. 9 and 10, are DENIED. Defendant may not renew the request for sanctions set forth at ECF No. 9, but she may renew the request set forth in ECF No. 10, following Plaintiff's response to the Order to Show Cause that will separately issue.

**SO ORDERED** at Hartford, Connecticut, this 30th day of September, 2026.

*/s/ Sarala V. Nagala*
SARALA V. NAGALA
UNITED STATES DISTRICT JUDGE